IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BANCCENTRAL, National Association,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. CIV-22-629-R |
| | ) | |
| **KYLE D. HUGHBANKS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER

Before the Court is Defendant's Motion to Dismiss (Doc. No. 6), Plaintiff's Response (Doc. No. 7), and Defendant's Reply (Doc. No. 8). Upon consideration of the parties' filings, the Court GRANTS Defendant's Motion to Dismiss.

On November 9, 2021, the Office of the Comptroller of the Currency ("OCC") issued a Consent Order formally declaring that Plaintiff BancCentral, National Association, Alva, Oklahoma ("BancCentral") was in "troubled condition." (Doc. No. 1-3, at 31). Defendant Kyle Hughbanks, BancCentral's President, was subsequently terminated for cause on July 26, 2022 (Doc. No. 1, at 2, ¶ 6). BancCentral filed this action the next day invoking federal question jurisdiction and seeking a judgment declaring that two post-employment payments sought by Defendant Hughbanks are prohibited "golden parachute" payments under 12 C.F.R. § 359.2. (Doc. No. 1, at 1, 3, ¶¶ 3, 21-22).

The term "golden parachute" generally refers to an employment agreement between a business and an executive stipulating that the business will compensate the executive at a predetermined amount should the executive be terminated. In certain circumstances, the

Federal Deposit Insurance Corporation ("FDIC") regulates these payments "to prevent the improper disposition of institution assets and to protect the financial soundness of insured depository institutions . . . and the federal deposit insurance funds." Regulation of Golden Parachutes and Other Benefits Which May Be Subject to Misuse, 61 Fed. Reg. 5926-02, 5926-27 (proposed March 29, 1995) (codified at 12 C.F.R. pt. 359). To that end, the FDIC prohibits federally insured national banks deemed financially "troubled" from making severance payments or other golden parachute payments to a terminated executive without approval of the OCC. *See* 12 U.S.C. § 1813(q); 12 C.F.R. § 359 *et seq*. The OCC may approve payment if the bank or terminated executive certifies that they are:

> not aware of any information, evidence, documents or other materials which would indicate that there is a reasonable basis to believe . . . that:
> (i)    [t]he [executive] has committed any fraudulent act or omission, breach of trust or fiduciary duty, or insider abuse with regard to the [bank] . . . that has had or is likely to have a material adverse effect on the [bank];
> (ii)   [t]he [executive] is substantially responsible for the . . . [bank's] troubled condition; [and]
> (iii)  [t]he [executive] has materially violated any applicable federal or state banking law or regulation that has had or is likely to have a material effect on the [bank].

12 C.F.R. § 359.4(a)(4)(i)-(iii).

Plaintiff BancCentral asserts it cannot make such a certification because it "is aware of information which would indicate there is a reasonable basis to believe" that Defendant Hughbanks engaged in conduct enumerated in § 359.4(a)(4)(i)-(iii). (Doc. No. 1, at 5, ¶ 27). Therefore, Plaintiff contends that Defendant's severance compensation and deferred compensation are "unpayable and barred by 12 C.F.R. § 359.2," and asks for declaratory judgment to that effect. (Doc. No. 1, at 1, ¶ 3). Defendant argues, in part, that the Court

2

lacks subject matter jurisdiction to hear this case because the issues are not ripe for decision. Though the Court agrees that it lacks subject matter jurisdiction, its conclusion rests more fundamentally on a lack of federal question jurisdiction under 28 U.S.C. § 1331.

Federal courts "are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citing *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)) (additional citations omitted). To invoke the jurisdiction of a federal court, a party "must prove that the case is within the court's subject matter." *Id.* at 512. A case is said to "arise under federal law within the meaning of § 1331, [when] the plaintiff's well-pleaded complaint . . . establish[es] one of two things: either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1023 (10th Cir. 2012) (internal quotation marks and citations omitted).

First, while Congress has given the FDIC authority to designate certain payments as prohibited golden parachutes, nothing in the text of 12 U.S.C. § 1828(k) or 12 C.F.R. § 359, *et seq.* purports to create a cause of action arising under federal law. Plaintiff reasons that it "is not affirmatively pressing a 'right of action;' rather, [it] is asserting that a federal statute and regulation <u>grant</u> it a defense" that has been recognized by the Tenth Circuit Court of Appeals in *Martinez v. Rocky Mountain Bank*, 540 F. App'x 846 (10th Cir. 2013). (Doc. No. 7, at 19). The procedural posture of *Martinez*, however, is distinguishable from the present matter. In *Martinez*, a former bank executive brought a breach of contract action

3

against the bank in federal court based on diversity jurisdiction after the bank refused to pay under the terms of a settlement agreement because federal regulators deemed it a prohibited golden parachute payment. *Martinez*, 540 F. App'x at 849-50; *see also* Appellant's Br., No. 11-8076, 2013 WL 635597, at *v (10th Cir. Feb. 11, 2013) (asserting diversity jurisdiction). In response, the bank raised the defense of impracticability. *Id.* at 850, 852. Here, Plaintiff BancCentral is not raising an impracticability defense in response to a complaint properly plead in federal court; rather, it is seeking a declaratory judgment.

An action for declaratory relief cannot be brought in federal court simply because an anticipated defense derives from federal law. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 673-74 (1950); *see Woods v. City & County of Denver*, 62 F. App'x 286, 289 (10th Cir. 2003) ("construction of a federal statute, standing alone, is not a 'cause of action,' nor does it confer federal question jurisdiction"). The Tenth Circuit has held that:

> In actions for declaratory judgment . . . the position of the parties is often reversed: the plaintiff asserts a defense to an anticipated action by the declaratory judgment defendant. It is the character of the impending action, not the plaintiff's defense, that determines whether there is federal question jurisdiction. Thus, federal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law.

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) (citations omitted). Here, any potential suit by Hughbanks would almost certainly arise under state law via a breach of contract claim. (*See* Doc. No. 6, at 10). An anticipated defense derived from 12 C.F.R. § 359 cannot confer federal question jurisdiction.

Second, Plaintiff's complaint does not establish that its right to relief depends on resolution of a substantial question of federal law. The Tenth Circuit has determined that:

4

> The narrow boundaries of the substantial question category are marked by a few important principles. For example, the recognition of substantial question jurisdiction does not 'disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.' *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Nor can federal question jurisdiction depend solely on 'a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

*Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014); *see also Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 313 (2005) ("shying away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' [the Constitution, laws, or treaties of the United States] door"). The Court finds these guiding principles dispositive in the present matter. Plaintiff's assertion "that a federal statute and regulation <u>grant</u> it a defense" should Defendant file suit is insufficient to bring this action within the narrow boundaries of the substantial question category. (Doc. No. 7, at 19). Accordingly, the Court concludes that it lacks federal question jurisdiction and dismisses Plaintiff's declaratory judgment action pursuant to Fed. R. Civ. P. 12(b)(1).

The Court notes that federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Considering the nature of this case and the fact that neither party has made a request to the FDIC or OCC to ascertain whether the post-employment payments at issue are permissible under 12 C.F.R. § 359.2, the Court,

in its discretion, would decline to exercise jurisdiction over this action even if subject matter jurisdiction existed.

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 6) is GRANTED.

**IT IS SO ORDERED** this 1st day of February 2023.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE